AO (Rev. 12/93) Criminal Complaint

## United States District Court

DISTRICT OF _____ DELAWARE _____

UNITED STATES OF AMERICA

v.

DENNIS D. CARSON

Criminal Complaint 06- 121M-MPT

(Name and Address of Defendant)

I, the undersigned complainant, being duly sworn, state the following is true and correct to the best of my knowledge and belief. On or about October 10, 2006, in Kent County, in the District of Delaware, and elsewhere, defendant(s), (Track Statutory Language of Offense):

> With the intent to extort any money or other thing of value, transmitted in interstate commerce a communication containing a threat to injure the person of another,

in violation of Title __18__ United States Code, Section(s) __875(b) and (c)__.

I further state that I am a(n) __Special Agent, Federal Bureau of Investigation__ and that this complaint is based
Official Title
on the following facts:

SEE ATTACHED AFFIDAVIT

Continued on the attached sheet and made a part hereof:   YES

FILED
OCT 20 2006
U.S. DISTRICT COURT
DISTRICT OF DELAWARE

Signature of Complainant
Taneka S. Harris
Special Agent
Federal Bureau of Investigation

Sworn to before me and subscribed in my presence,

October 20, 2006                              at   Wilmington, DE
Date                                               City and State

Honorable Mary Pat Thynge
United States Magistrate Judge
Name & Title of Judicial Officer                   Signature of Judicial Officer

## AFFIDAVIT OF TANEKA S. HARRIS

I, Taneka S. Harris, having been duly sworn, do hereby depose and state:

1. I am a Special Agent with the Federal Bureau of Investigation (FBI) and have been so employed for approximately two years. I have been assigned to the FBI office located in Wilmington, Delaware since May 2005. During my employment with the FBI, I have investigated a variety offenses within the criminal program.

2. This affidavit is submitted in support of a Criminal Complaint charging DENNIS D. CARSON (CARSON) with a violation of Title 18, United States Code, Section 875(b) (Interstate Communications), which makes it a crime for a person, with intent to extort from any person any money or other thing of value, to transmit in interstate commerce any communication containing any threat to injure the person of another. Additionally, this affidavit is submitted in support of a Criminal Complaint charging CARSON with a violation of Title 18, United States Code, Section 875(c) (Interstate Communications), which makes it a crime for a person to transmit in interstate commerce any communication containing any threat to injure the person of another.

3. I have personally participated in this investigation since its inception in October 2006, and am familiar with the facts contained in this affidavit. The information contained in this affidavit was obtained by reviewing a letter written by CARSON and interviewing victims of these offenses. The information contained in this affidavit is not a complete recitation of the facts and evidence discovered during this investigation.

4. James E. Wallace, Jr., Esquire (Wallace), a partner at Bowditch and Dewey, LLP (B&D, LLP), has advised that Christine Collins, Esquire is an associate with B&D, LLP. B&D, LLP provides legal representation for Springfield College (Springfield). Springfield's main campus is located in Massachusetts, and one of its satellite campuses is located in Wilmington, Delaware.

5. CARSON enrolled at the Wilmington, Delaware campus of Springfield in fall 2004. Circa March 2005, CARSON was dismissed from Springfield for violations of the Code of Student Conduct. Thereafter, CARSON filed a civil suit against Springfield in October 2005.

6. In 2006, Collins was assigned to handle the defense of the lawsuit against Springfield brought by CARSON. On October 10, 2006, CARSON faxed Collins at her B&D, LLP fax number a four-page letter dated October 7, 2006, from a Staples Copy and Print Center (Store Number 0301) located at 1041 North Dupont Highway, Dover, Delaware 19901. CARSON sent the letter from fax number (302) 736-5886. A representative from Staples Copy and Print Center confirmed that fax number printed on the cover sheet utilized by CARSON belonged to Store Number 0301. Said letter was received by Collins in Worcester, Massachusetts on the same date.

Colorado, writing in Oct 21st Mr. was ammunition shooter and, based on his extensive training, he was "in a very unique position to state my opinion" about the massacre. CARSON went on to make specific suggestions about particular weapons the Columbine High School shooters should have used, including a Springfield Armory M-14, which he termed "the finest combat weapon there ever was" and noted that his girlfriend had, among other weapons. Additionally, CARSON wrote that the Columbine High School shooters should have shot each of the victims twice, and utilized ammonia nitrate bombs for greater devastation. In the context of the letter, CARSON's references to the Columbine High School shooting massacre suggested that if his current lawsuit against Springfield was not resolved in his favor, similar events might result.

8. CARSON advised in the letter that he "is sitting on a lot of hatred" because of his dismissal from Springfield. Moreover, in response to his dismissal and litigation with Springfield, CARSON wrote the following, "I will not rest until I complete my objectives and I will use the same tenacity to insure that I receive justice from Springfield College one way or another and that is not a threat either."

9. CARSON continued by writing the following statements:

> My position is that when Springfield College kicked me out of the college they shot their load. When your law firm answered my complaint and stated that I was not kicked out of the college for a breach of contract but because of a behavior problem you all shot your load. I have not shot my load yet, but if I have to it will be the grand daddy of them all.

10. Ultimately, CARSON made the following monetary demands:

> What I want is $75,000 and free tuition at Springfield College until I complete the mental health counseling program or $102,237. I will not take one Penney less!!! I can only promise you that Springfield College, one way or another will pay for the injustice they perpetuated against me.

11. On October 19, 2006, I telephonically interviewed Collins. Collins advised that upon reading CARSON's letter she was "speechless" and she felt her "heart drop to the bottom of her stomach." Collins believed the letter to be "cold and ruthless" and said the contents of the letter made her shake. Moreover, Collins felt threatened by the words CARSON wrote in his letter.

12. On October 19, 2006, I interviewed Wallace telephonically. Wallace advised that he supervises Collins at B&D LLP, and oversees the defense of the CARSON case for

Springfield. Upon reviewing CARSON's letter, Wallace advised that he did not take the letter as a joke, and believed the contents of the letter constituted serious threats.

13. Wallace advised that based upon the severity of the statements in CARSON's letter, Springfield's Wilmington, Delaware campus was closed to the faculty and students from October 12, 2006 to October 18, 2006. The campus reopened on October 19, 2006, when Springfield officials were assured that CARSON had been arrested and detained to face pending state charges related to the letter.

WHEREFORE, your affiant avers that there is probable cause to believe that on or about October 10, 2006, DENNIS D. CARSON committed a violation of 18 U.S.C. § 875 (Interstate Communications), by faxing a letter containing threats from Dover, Delaware to Worcester, Massachusetts.

Taneka S. Harris
Special Agent
Federal Bureau of Investigation

Sworn and subscribed before me this 20 day of October, 2006.

The Honorable May Pay Thynge
United States Magistrate Judge
District of Delaware